UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X   Docket No.: 01-CR-158-01
UNITED STATES OF AMERICA

-       against-                                       **REPLY AFFIRMATION IN
                                                       FURTHER SUPPORT OF
                                                       MOTION TO TRANSFER**

MATTHEW RAMMELKAMP,
                                                       Magistrate Judge William D. Wall

       Defendant.
---------------------------------------------------X   Honorable Thomas C. Platt

      Eyal Talassazan, an attorney admitted to practice law before this Court and the Courts of the State of New York, hereby affirms the following under the penalties of perjury:

      1.     I am an associate at the Law Offices of Thomas F. Liotti, attorneys for defendant Matthew Rammelkamp and as such, I am personally and fully familiar with all of the facts hereinafter set forth.

      2.     I submit this reply affirmation in further support of the defendant's Motion to Transfer dated February 4, 2005, and for such other and further relief as to this Court may seem just and proper.

      3.     Contrary to the allegations of the United States Attorney's Office ("US Attorney"), the arson of a partially constructed dwelling home does not fall under the ambit of 18 U.S.C. §§ 844(i) and 844(n).  The cases cited in the US Attorney's opposition to this motion fail to specifically address the issue of the arson of a private dwelling home, or, as in this case, the arson of a partially constructed private dwelling home.  Rather, the case law provided only confirms that commercial buildings are subject to the federal arson statute, which further supports the defendant's arguments on the motion.  More importantly, the US Attorney has failed to demonstrate the requisite nexus between the arson of a locally and partially constructed

dwelling home and interstate commerce which would invoke federal jurisdiction. Without providing a suitable nexus, federal jurisdiction over this matter, which is traditionally handled by local authorities, is overreaching. Rather, this case was improperly seized by the US Attorney from the state authorities and the US Attorney has failed to justify this decision.

4. Also, the US Attorney has failed to substantiate any rational nexus between the destruction of two construction trucks used for local commerce and interstate commerce. Without the requisite nexus between the trucks and interstate commerce, there is no basis for federal jurisdiction over the same. Rather, the relationship between a local construction truck and interstate commerce is, at best, and if at all, de minimus.

5. Further, the arguments made by the US Attorney regarding the judicial review of the certification to invoke federal jurisdiction blithely ignore the fact that *United States v. Vancier*, 515 F.2d 1378 (2d Circuit 1975), the leading case in the Second Circuit regarding this issue, was decided almost a decade before the amendment was made to 18 U.S.C. § 5032 which incorporated the "Substantial Federal Interest" prong into the statute. It is important to note that the US Attorney certified this case upon the same "Substantial Federal Interest" prong of the Act which was added to the statute in 1984. As such, this issue is ripe for judicial review as the lead case in this circuit, *United States v. Vancier*, *supra*, is outdated and does not address the newly included third prong of the statute. In essence, the *Vancier* case cannot be the authoritative case when it did not consider the amendment made to the statute. The *Vancier* case also fails to take into account sweeping changes made in New York State regarding the handling of juvenile delinquency matters, including the statutory amendments made in the Family Court Act of the State of New York. Those amendments (see Family Court Act §§ 301.1 through 385.2)

specifically address the prior alleged shortcomings of New York State's handling of juvenile matters which were specifically noted in the *Vancier* decision. In fact, it was the perceived shortcomings in New York State's handling of juvenile matters which compelled the *Vancier* Court to interpret the statute narrowly and invoke federal jurisdiction.

**The arson of a partially constructed private dwelling home does not fall under the ambit of 18 U.S.C. §§ 844(i) and 844(n).**

6. The arson of a private dwelling home does not fall under the ambit of 18 U.S.C. §§ 844(i) and 844(n). *Dewey J. Jones v. United States*, 529 U.S. 848, 849, 120 S.Ct. 1904, 1907 (2000). Moreover and contrary to the allegations of the US Attorney, the arson of a partially constructed private dwelling house is not properly charged under the said statute. The US Attorney attempts to support it's disingenuous position by citing cases such as *United States v. Andrini*, 685 F.2d 1094 (3rd Cir. 1982), a case which holds that the arson of a commercial office building is a commercial activity affecting interstate commerce for the purposes of 18 U.S.C. §§ 844(i) and 844(n). However, the Court in Andrini stated "We have discovered only two cases in which circuit courts have not found 844(i) jurisdiction, neither of which involved commercial property." This statement comports with the defendant's position as the arson committed by the defendant did not involve commercial property. Rather, it involved a non commercial property. As such, the *Andrini* case does not support the US Attorney's ill advised position. The position of that Court contradicts the US Attorney's position and verifies that non-commercial property is not properly charged under said statute.

7. Also, the US Attorney has not established the interstate commerce link which was found in *United States v. Patterson*, 792 F.2d 531 (5th Cir. 1986), another case which the US Attorney cites as support for it's far reaching position. In *Patterson*, the Court held that the arson of a partially constructed condominium complex was within the purview of the federal arson statute. However, the Court stated that the condominium complex "was a commercial venture, not simply a private residence," thereby distinguishing it and casting further doubt as to whether the arson of a partially constructed private dwelling home falls under the ambit of the statute. The Court, by it's decision, implied that the commercial nature of the condominium complex was the only reason why the federal arson statute was applicable. Further, the Court in *Patterson* only found a sufficient nexus to interstate commerce because the construction of the condominium complex "was a significant business venture involving out of state partners and financing by an out of state lender." The US attorney has failed to illustrate the same nexus in this case and has not indicated what, if any, nexus exists between the arson of the partially constructed private dwelling homes and interstate commerce. In fact, the US Attorney's office has utterly and objectively failed to provide any proof to establish the requisite nexus between the arson of a partially constructed dwelling home and interstate commerce. This Court should draw the most adverse inferences from the US Attorney's failure to provide this Court with any proof which supports it's contentions that the actions of the defendant had a direct effect on interstate commerce. It is noteworthy that this motion and accompanying memorandum of law were served upon the United States Attorney on February 9, 2005 and were not responded to by the US Attorney until July 26, 2005.

8.    The US Attorney's reliance upon *United States v. Russell*, 471 U.S. 858, 105 S.Ct. 2455 (1985) is also misguided as that case involved the arson of an apartment building that was used as rental property.  In *Russell*, the Court stated "By its terms, however, the statute only applies to property that is used in an activity that affects commerce.  The rental of real estate is unquestionably such an activity."  Once again, the Court implied that the rental of the apartments provided a sufficient nexus between the apartment complex and interstate commerce, further illustrating the need for a nexus between the property in question and interstate commerce in order to apply the federal arson statute.  Since the partially constructed homes involved in this action were not rentals and did not have the requisite and direct relationship effecting interstate commerce, the *Russell* case has no bearing on the arson of the partially constructed private dwelling homes in question.

9.    As evidenced above, the US Attorney has not presented any case which specifically states that the arson of a partially constructed private dwelling home is within the purview of the federal arson statute.  Quite to the contrary, none of the aforementioned cases specifically state that the arson of a partially constructed private dwelling house falls under the ambit of the federal arson statute.  This case and the corresponding set of facts are clearly distinguishable from all of the cases offered by the US Attorney in their opposition.  The arson of a private dwelling home does not fall under the federal arson statute as "legislative history indicates that Congress intended to exercise its full power to protect 'business property.'" *Russell v. United States, supra.*  During Congressional floor debates in connection with the federal arson statute, Committee Chairman Emanuel Celler[1], who recognized the broad coverage

---

[1] This Court will remember Mr. Cellar as the former Congressman from Brooklyn who was defeated for re-election by Elizabeth Holtzman, after he had served fifty (50) years in this nation's House of Representatives.  Mr. Cellar had also served as Chairman of the House of

of this statute, stated "the mere bombing of a private dwelling home even under this bill would not be covered because of the question whether Congress would have the authority under the Constitution." *Russell v. United States, supra.* Suffice it to say that the Congressional Record implies that the constitutionality of applying the federal arson statute to the arson of a partially constructed private dwelling home is highly questionable.

      10.    In fact, the US Attorney has not met their burden of proof in "indicating whether the regulated activity substantially affects interstate commerce." *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 1630, 131 L.Ed.2d 626 (1995). In *United States v. Corona*, 108 F.3d 565 (5th Cir. 1997), the Court reaffirmed the Supreme Court's hesitance to enhance, enlarge or expand Congress's power under the commerce clause. The Court stated "federal courts have a duty to scrutinize Congress's commerce power and dispel the notion that <u>de minimus</u> connections to interstate commerce can legitimize federal legislative powers." *United States v. Corona*, *supra*. Further, the Court went on to state:

> "Like the statute in *Lopez*, § 844(i) imposes a criminal penalty in an area that has been the domain of state jurisprudence throughout our history. The consequences of arson are typically local, and we have traditionally left it to the states to determine the appropriate penalty, just as we have traditionally left educational policy to localities, which 'may perform their role as laboratories for experimentation to devise various solutions where the best solution is far from clear.'" *United States v. Corona*, *supra*.

Clearly, the arson of a partially constructed private dwelling home is not within the scope of federal jurisdiction. As illustrated above, the Supreme Court has begun to question Congress's commerce power and has curbed the same to avoid overstepping boundaries in issues which are traditionally handled by state authorities. Indeed, the holding of *Lopez* confirms the

---

Representatives Judiciary Committee and as such can be considered a Constitutional scholar of some renown.

aforementioned and "calls into question a family of cases interpreting § 844(i)." *United States v. Corona*, *supra*.

**The act of arson on a construction truck does not,
in and of itself, provide federal jurisdiction over this
case.**

11. Although the US Attorney's office has argued to the contrary, the arson of a construction truck which has no direct nexus to interstate commerce does not invoke federal jurisdiction over this action. The US Attorney's reliance upon *United States v. Viscome*, 144 F.3d 1365 (11th Cir. 1998) is, at the very best, misguided and superfluous. In *Viscome*, the Court affirmed that the truck at issue has the requisite nexus to interstate commerce since:

> "The government's evidence showed that the truck at issue here was the subject of an interstate lease at the time of Gentile's attempted bombing. The truck was leased by the City of Palm Harbor, Florida from Ford Motor Company in Atlanta, Georgia. Because interstate truck leasing is itself a tangible component of interstate commerce, the truck necessarily was used in an activity that in the aggregate has a substantial effect on interstate commerce."

As mentioned above, the US Attorney's office must provide proof that the truck had a direct nexus to interstate commerce. The US Attorney's office has failed to meet this burden and has not provided any information upon which this Court can reasonably rely and which would directly link the construction trucks to interstate commerce. As such, the government has not met the test set forth in *Viscome* and cannot properly charge the defendant for the same in federal court.

**The Court should review the certification of the
US Attorney pursuant to 18 U.S.C. § 5032 which
invoked federal jurisdiction.**

12. Contrary to the position of the US Attorney, the certification of the US Attorney

which invoked federal jurisdiction over this action as well as the leading Second Circuit case regarding the same are both ripe for judicial review. This issue is hotly contested throughout the circuits as the federal circuit is split on the issue of whether the certification by the US Attorney is subject to judicial review. Even though *United States v. Vancier, supra*, holds that the certification by the US Attorney is not subject to judicial review, the inclusion of the substantial federal interest prong into 18 U.S.C. § 5032 after *Vancier* was decided makes this issue ripe for judicial review. Specifically, *Vancier* was decided in 1974 and the substantial federal interest prong was added to said statute in 1984. *Vancier* was decided a decade before the substantial federal interest prong was added to the statute, illustrating the need for a contemporary judicial review on this matter.

13. Based upon the aforementioned, it is respectfully submitted that *Vancier* is not dispositive of the issues presented to this Court since it was decided prior to the amendment which incorporated the substantial federal interest prong to the statute. Notably, since the addition of the amendment to the statute, several Circuits have held that the certification of the US Attorney's office is subject to judicial review to assure compliance with the statute. *United States v. Juvenile Male No. 1*, 86 F.3d 1314 (4th Cir. 1996); *United States v. Juvenile Male*, 923 F.2d 614, 618 (8th Cir. 1991). Cases which oppose judicial review of the certification (*United States v. Vancier, supra* and *United States v. I.D.P.*, 102 F.3d 507 (11th Cir. 1996)) have held that the certification is not subject to judicial review because "section 5032 not only failed to set forth standards by which the court could determine the appropriateness of certification but also served to qualify prosecutorial discretion rather than confer upon the courts the power to decide in which forum to bring juvenile delinquency cases." *United States v. I.D.P.*, *supra*.

14. Contrary to the aforementioned position of the Eleventh Circuit, the Court in *United States v. Juvenile Male*, *supra*, held the certification is subject to judicial review and the Court stated "we are doing nothing more than reviewing the certification for compliance with section 5032–i.e., whether the United States Attorney certified that one of the crimes specified by Congress has been alleged." As such, it is not impermissible for this Court to assure that the certification by the US Attorney is properly made within the confines of the statute and, ultimately, to assure that the certification meets the jurisdictional requirements of the Court.

15. Similarly, the Fourth Circuit has held that certifications made pursuant to the substantial federal interest prong are subject to judicial review. *United States v. Male Juvenile*, 844 F.Supp. 280 (E.D. Va 1994). The Court in *United States v. Male Juvenile* stated "the 1984 amendments, however injected a new element into the certification calculus: is the crime of a sufficiently serious type that federal resources should be called upon, without regard to the State's willingness or ability to handle the matter? The addition of the third prong, with its focus on the offense rather than the offender, vastly expanded the possible bases for invoking federal jurisdiction." As such, the need to revisit the holding of *Vancier* is pertinent to keep current with the amendment made to the statute and to ensure that the federal government is not acting improperly in invoking jurisdiction.

16. Further, it is respectfully submitted that the substantial federal interest prong of the statute was not envisioned by it's creators to be utilized for the arson of a partially constructed private dwelling home. The Court in *United States v. Male Juvenile*, *supra,* noted that:

> "a substantial federal interest should only be found in cases that give rise to special federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an

>aircraft hijacking, a kidnaping where state boundaries are crossed, a major espionage or sabotage offense, participation in large scale drug trafficking, or significant or willful destruction of property belonging to the United States."

An ordinary arson does not rise to the level of the aforementioned crimes, giving more credence to the judicial review of the certification of the US Attorney which certified, contrary to the intent of the substantial federal interest prong of the statute, that there was a substantial federal interest in this case.

17. It is respectfully submitted that this Court should adopt the position of the Fourth and Eighth Circuits since the offenses committed by the defendant are not violent federal offenses as enumerated in the decision of *United States v. Male Juvenile*, *supra*. It only seems logical that this Court may, as the Eleventh Circuit held, review the certification of the US Attorney for compliance with the statute. To review the certification for compliance with the statute would not disturb the holding of *Vancier* since the Court is not attempting to review the certification on the merits nor does it "grant the power to the courts to make the final decision." *United States v. Vancier, supra*. Rather, it would supplement *Vancier*'s holding and, in the interests of justice, ensure compliance with the statute.

18. It should be noted that the Court in Vancier declined to review the certification because "there are several significant deficiencies in the New York youthful offender program as compared to the federal juvenile delinquency system." *United States v. Vancier, supra*. Further, the Court also stated that the absence of community based facilities for juveniles in the New York youthful offender program was sufficient to sustain the validity of the Attorney General's certification. *United States v. Vancier, supra*. Since *Vancier* was decided over thirty (30) years

ago, New York State has developed appropriate means and facilities to deal with juvenile delinquents through Article Three (3) of the Family Court Act. The said article of the Family Court act is in depth, sensible and is designed with rehabilitative goals for young juvenile offenders. As such, *Vancier's* decision has become "outdated" to the extent that the statutory amendments added another element and dimension based on the new prong addressing a substantial federal violation of law, and must be revisited in accordance with the aforementioned changes in New York State's handling of juvenile delinquent matters.

**The US Attorney's offer to withdraw the defendant's guilty plea raises the issue of whether the defendant will be allowed to <u>regain his juvenile status.</u>**

19. The US Attorney's offer to withdraw the defendant's plea raises the ancillary issue of whether or not the defendant should regain his juvenile status or be tried as an adult as was agreed upon in the plea agreement. Notably, as part of the plea agreement, the defendant agreed to waive his juvenile status and was transferred to adult status. As this Court is already aware, 18 U.S.C. § 5032 affords juvenile delinquents rehabilitative opportunities that are not provided for adults charged with similar or the same crime.

20. It is respectfully submitted that the defendant should regain his status as a juvenile "because there is a presumption in favor of juvenile adjudication, and the burden is on the government to establish that transfer to adult status is warranted." *United States v. Ramirez et al.*, 297 F.3d 185 (2nd Cir. 2002). In the present case, the government has not established why a transfer to adult status is warranted. As such, this Court should insist, in the interest of justice, on transferring the defendant back to juvenile status.

21. The learned Court in *United States v. Ramirez et al.*, *supra*, set forth the standard

upon which this Court may determine whether or not a transfer to adult status is warranted.  The Court stated:

> "In evaluating whether a transfer determination is in the interest of justice, the district court must consider and make findings on the record with respect to each of six factors.  See 18 U.S.C. § 5032.  The factors are:
>
> 1. The age and social background of the juvenile;
> 2. The nature of the alleged offense;
> 3. The extent and nature of the juvenile's prior delinquency record;
> 4. The juvenile's present intellectual development and psychological maturity;
> 5. The nature of past treatment efforts and the juvenile's response to such efforts;
> 6. The availability of programs designed to treat the juvenile's behavioral problems."

22. Based upon a close examination of the six factors set forth above, it is clear that the defendant should regain his juvenile status.  The following chart indicates how each factor translates in this particular case:

| FACTOR | APPLICABILITY TO THIS CASE |
| --- | --- |
| 1.  Age and social background. | The defendant was only sixteen (16) years of age when he committed the offenses for which he is charged and is from a middle class family in Long Island, New York. |
| 2.  The nature of the alleged offense. | The offenses committed by the defendant were not intended to cause injury and the defendant took great pains to assure that no one was harmed during the commission of the crimes. |
| 3.  Extent and nature of the juvenile's prior delinquency record. | The defendant has no prior criminal record and has not been arrested since the commission of the crimes he is presently charged with. |

| 4. The juvenile's present intellectual development and psychological maturity. | The defendant is currently enrolled in college where he is excelling in all classes in which he is enrolled. |
|---|---|
| 5. Nature of past treatment efforts and the juvenile's response to such efforts. | The defendant has sought and successfully completed treatment with psychologists who affirm that the defendant's rehabilitation has progressed since these events transpired. A copy of the psychological report of the defendant is annexed as Exhibit "A." |
| 6. The availability of programs designed to treat the juvenile's behavioral problems. | New York State has adequate programs to help rehabilitate the defendant, including but not limited to Article 3 of the Family Court Act. |

23.    As illustrated above, the defendant should be afforded the opportunity to regain his juvenile status in connection with the charges brought against him. It should be noted that 18 U.S.C. § 5032 still applies to this case even though the defendant has attained the age of twenty one (21). *United States v. Ramirez et al., supra*. Specifically, the Court in *Ramirez* stated:

> "Under the scheme set forth in the JDA, a juvenile between eighteen and twenty-one who is prosecuted by information for federal offenses committed before the age of eighteen and who is found guilty of committing an act of juvenile delinquency is subject to probation or "official detention" for no more than five years, a term which is normally considerably less than the prison term that an adult who committed the same crime would receive."

24.    The applicability of the JDA is determined by the age of the defendant at the time of the filing of the juvenile information. *United States v. Ramirez et al., supra*. All things considered, the defendant should be afforded an opportunity to regain his juvenile status in connection with charges brought against him.

25.    Further, the defendant's rights pursuant to Equal Protection Clause of the

Fourteenth Amendment of the United States Constitution are called into question since he is being prosecuted as an adult when the crimes for which he was charged were committed when he was sixteen years of age and by definition was still a juvenile.  Since the defendant is afforded the opportunity to be a Youthful Offender pursuant to state law if the crime occurred prior to his nineteenth birthday, he should be afforded the same opportunity in federal court.  Specifically, if the defendant is tried as an adult as was agreed to during his plea, he would not be afforded the procedural safeguards that he is afforded in state proceedings.  As such, transferring the defendant from juvenile to adult status is an affront to his constitutional rights and in contrast to the protection that he would receive in the state court.

26. It is respectfully requested that this Court grant the defendant's motion in its entirety, and grant defendant such other, further, and different relief as to the Court seems just and proper.

WHEREFORE, the US Attorney has had ample opportunity to address the aforementioned issues and has failed to do so, thus, the US Attorney should not be afforded a Sur-Reply and this application should be decided in favor of the defendant.

Dated: Garden City, New York
       August 11, 2005

_____
EYAL TALASSAZAN (ET4491)